OPINION
{¶ 1} This is an administrative appeal taken from a final judgment of the Geauga County Court of Common Pleas that affirmed the decision of appellee, the Ohio Veterinary Medical License Board, to conditionally suspend the veterinary licenses of appellants, Drs. Scott D. Shell and Douglas Paroff. For the reasons that follow, we reverse the judgment of the common pleas court and remand the matter for further proceedings consistent with this opinion.
 {¶ 2} The record shows that Dr. Scott Shell ("Dr. Shell") is a veterinarian licensed in Ohio and West Virginia with a practice located in Chagrin Falls, Ohio. Dr. Douglas Paroff, who is also a veterinarian licensed in Ohio, is employed by Dr. Shell's practice.
 {¶ 3} On March 16, 1999, appellee initiated an action against appellants alleging that they had used anabolic steroids for non-therapeutic purposes, in violation of R.C. 4741.22(A), (R), and (W), and Ohio Adm. Code 4741-1-03(A), and that they had failed to maintain their records in accordance with R.C. 4741.22(A) and (AA), Ohio Adm. Code4741-1-03(B) (6a) and (6c), and Ohio Adm. Code 4741-1-21(A), (C), (E), (F), (G), (I), (L), (O), (P), and (U). After conducting a hearing on the charges, the hearing examiner, Marc Myers ("Myers"), issued a written report in which he recommended that the charges relating to the use of anabolic steroids be dismissed. With respect to the failure to properly maintain their records, Myers found that appellants had violated Ohio Adm. Code 4741-1-21. As a result, Myers recommended that appellee suspend appellants' licenses for ten days, with the condition that the suspensions would be waived pending completion of a one-year probationary period. Myers also suggested that appellants should be required to submit a sample of patient records for review on a quarterly basis.
 {¶ 4} After appellee adopted Myers' findings of fact and conclusions of law and accepted his recommendations as its own, appellants filed an appeal with the Geauga County Court of Common Pleas. On June 12, 2002, the common pleas court issued a judgment entry affirming appellee's decision.
 {¶ 5} Appellants subsequently filed a timely notice of appeal with this court. They now submit the following assignments of error for our consideration:
 {¶ 6} "[1.] In affirming an Order of the Ohio Veterinary Medical Licensing Board ("Board") finding that appellants Scott D. Shell, D.V.M. and Douglas Paroff, D.V.M. violated certain record keeping rules, the trial court erred because: (a) the doctors' record keeping practices met or exceeded both the professional standard and the practices of racetrack veterinarians across the country; (b) a violation can be found only by applying Ohio's rules in a manner which is arbitrary, unreasonable and capricious and which makes compliance impossible; and (c) in light of the above, the application of the rules and the findings of the Board violate due process and are unenforceable.
 {¶ 7} "[2.] In affirming the Board's Order against Drs. Shell and Paroff, the trial court erred because the Board, in conducting an inspection without prior notice and an investigation without a prior written complaint, exceeded its authority and its Order, therefore, is void and unenforceable."
 {¶ 8} We will address appellants' second assignment of error first, as it is dispositive of this appeal. Appellants essentially argue under their second assignment of error that because appellee did not give them the required five-days written notice prior to inspecting their place of business, the inspection was unauthorized. Based on this assumption, appellants contend that the charges resulting from the unauthorized inspection should be dismissed.
 {¶ 9} In response, appellee maintains that under the powers set forth in R.C. 4741.26, it is authorized to inspect a place of business without notice if the inspection is conducted as part of an investigation. Appellee claims that it is only required to produce a written authorization for the investigation at the time of the inspection, and that if appellants' interpretation were correct, it would "severely hamper" appellee's ability to investigate possible violations.
 {¶ 10} R.C. 4741.26(A) provides that:
 {¶ 11} "(A) The state veterinary medical licensing board shall enforce this chapter and for that purpose shall make investigations relative thereto. Except as provided in this division, in making any inspection pursuant to this chapter, the board may enter and inspect, upon written notice of not less than five days and during normal business hours, any licensee's, permit holder's, or registrant's place of business. If the board has knowledge or notice, pursuant to a written complaint or any other written knowledge or notice by any person as verified by the signature of that person, of a violation of section4741.18, 4741.19, or 4741.23 of the Revised Code, it shall investigate and, upon probable cause appearing, shall direct the executive secretary to file a complaint and institute the prosecution of the offender. In conducting any investigation for a suspected violation of this chapter, the board or its authorized agent does not have to provide any prior written notice to the licensee, permit holder, or registrant as long as the board provides a written authorization for the investigation and the board or its authorized agent provides the licensee, permit holder, or registrant with a copy of the authorization at the time of the investigation. When requested by the executive secretary, the prosecuting attorney of a county or the village solicitor or city director of law of a municipal corporation, wherein the violation occurs shall take charge of and conduct the prosecution. The attorney general or his designated assistant shall act as legal adviser to the board and shall render such legal assistance as may be necessary."
 {¶ 12} In rejecting appellants' argument, Myers essentially adopted appellee's interpretation of R.C. 4741.26:
 {¶ 13} "R.C. 4741.26(A) provides for three separate types of inspections and/or investigations by [appellee]. First, the statute authorizes what are generally known as `compliance inspections'. These inspections require five days written notice to the veterinarian that [appellee], or its investigator, may enter the veterinarian's office during normal business hours to conduct an inspection to ensure compliance with all applicable laws.
 {¶ 14} "Next, R.C. 4741.26(A) provides that [appellee] may investigate alleged violations of R.C. 4741.18, R.C. 4741.19, or R.C.4741.23 upon a written complaint or other written knowledge or notice by any person. R.C. 4741.18, R.C. 4741.19, and R.C. 4741.23 address the unlawful practice of veterinary medicine and specific prohibitions against licensed veterinarians. All three statutes carry criminal penalties. See R.C. 4741.99. Investigations of these potential crimes by [appellee] require a prior written complaint or other writing signed by a person filed with [appellee].
 {¶ 15} "Finally, R.C. 4741.20(A) provides that [appellee] may investigate matters involving alleged violations of R.C. Chapter 4741 or the Rules of [appellee]. R.C. 4741.26(A) provides that no prior written notice need be given to the licensee, but only that written authorization for the investigation be provided to the licensee at the time of the investigation by [appellee] or its authorized agent.
 {¶ 16} "The instant case involves an investigation for alleged violations of R.C. 4741 and the Rules of [appellee]. R.C. 4741.26(A) requires only that written authorization for the investigations be provided to the licensee at the time of the investigation. There is no
requirement that such investigations may be undertaken only upon a written complaint." (Emphasis sic.)
 {¶ 17} The common pleas court agreed with Myers when it held that:
 {¶ 18} "The Court does not agree that [appellee] may only conduct an investigation if it has received a written complaint concerning purported violations of statutes and regulations. R.C. § 4741.26(A) does direct [appellee] to proceed in certain ways if it has a written complaint, but the aforementioned statute does not limit [appellee] to conducting investigations only in those instances when it has received a written complaint. There is no explicit or implied prohibition against [appellee] conducting an investigation on its own initiative.
 {¶ 19} "Whether or not Appellants received five days advance notice of an inspection by [appellee] has no bearing on the issues before this Court. Appellants were found to be in violation of certain record keeping requirements contained within the Ohio Administrative Code. Although, arguably, the records in question were kept, or improperly not kept, at Appellants' offices in Geauga County, the charges against Appellants and the findings and orders against them were not the result of an inspection of Appellants' place of business."
 {¶ 20} At least one court in Ohio has adopted appellee's position concerning when prior notice of an inspection is required. In OhioVeterinary Med. Bd. v. Singh (1998), 127 Ohio App.3d 23, 29, the First Appellate District held the following:
 {¶ 21} "R.C. 4741.03(D)(2) states that the board may `[e]xamine and inspect books, papers, public records, animal patient records, and other documentary evidence at the location where the books, papers, records, and other evidence are normally stored or maintained.' Thus, under the dictates of this statute, the board had the absolute right to examine Buster's records at Singh's office pursuant to an investigation. Because the board had directed Thompson to `conduct an investigation and/or compliance inspection of [Singh's] facility relative to a complaint filed with this office,' Thompson had the authority to inspect the records during his investigation of Singh's office.
 {¶ 22} "Singh makes two further arguments. First, he asserts that Thompson did not provide him with proper notice of the investigation as required by R.C. 4741.26(A). We first must distinguish between an inspection and an investigation under R.C. Chapter 4741. We interpret R.C. 4741.26(A) to allow the board to conduct an inspection of a veterinarian's place of business during normal business hours after giving five days' written notice. However, under R.C. 4741.26(A), `[i]n conducting any investigation for a suspected violation of this chapter, the board or its authorized agent does not have to provide any prior written notice to the licensee, permit holder, or registrant as long as the board provides a written authorization for the investigation.' This section further requires the board's investigator to provide a copy of the written authorization for an investigation to the subject of the investigation at the time it takes place.
 {¶ 23} "The intent of the statute seems clear. The board, in discharging its duties, needs to supervise veterinarians by conducting inspections and investigations. At least five days' notice is given to veterinarians before an inspection takes place. Obviously, the board would use inspections for routine checks of a veterinarian's facilities. But when a written complaint is filed with the board, it is allowed to investigate the complaint with notice given contemporaneously with the investigation. The element of surprise is obviously an important factor in conducting investigations to determine whether a veterinarian has violated a provision in R.C. Chapter 4741."
 {¶ 24} When interpreting statutes, courts must give due deference to those interpretations by "an agency that has accumulated substantial expertise and to which the General Assembly has delegated enforcement responsibility." Weiss v. Pub. Util. Comm. Of Ohio, 90 Ohio St.3d 15,17-18, 2000-Ohio-5. Nevertheless, "[i]f the meaning of a statute is unambiguous and definite, then it must be applied as written and no further interpretation is appropriate." State ex rel. Herman v.Klopfleisch (1995), 72 Ohio St.3d 581, 584.
 {¶ 25} We understand that the element of surprise is important when conducting an investigation. However, our reading of R.C. 4741.26 leads this court to conclude that appellee must give a licensed veterinarian five days notice before inspecting a place of business, even if the inspection is in conjunction with an investigation.
 {¶ 26} Appellee argues that there are different types of inspections that can be conducted and that the notice requirement only applies to what it defines as "compliance inspections." Therefore, because the investigation in this case was to determine whether appellants' use of anabolic steroids was consistent with accepted practices, appellee submits that prior notice was not required.
 {¶ 27} R.C. 4741.26(A) clearly provides that "[e]xcept as provided in this division, in making any inspection pursuant to this chapter, the board may enter and inspect, upon written notice of not less than fivedays and during normal business hours, any licensee's, permit holder's, or registrant's place of business. (Emphasis added.) The section of the statute relied upon by appellee never mentions inspections; rather, it simply states that "[i]n conducting any investigation for a suspectedviolation of this chapter, the board or its authorized agent does not have to provide any prior written notice to the licensee, permit holder, or registrant as long as the board provides a written authorization for the investigation and the board or its authorized agent provides the licensee, permit holder, or registrant with a copy of the authorization at the time of the investigation." (Emphasis added.)
 {¶ 28} If this court were to interpret R.C. 4741.26 in the manner proposed by appellee, we would be adding language to the statute that does not exist. State ex rel. Purdy v. Clermont Cty. Bd. of Elections,77 Ohio St.3d 338, 340, 1997-Ohio-278. This court also would be required to interpret the terms "inspection" and "investigation" as being interchangeable, which, even according to appellee, they clearly are not. Kimble v. Kimble, 97 Ohio St.3d 424, 2002-Ohio-6667, at ¶ 6
(holding that an undefined term in a statute "must be afforded its plain and ordinary meaning.").
 {¶ 29} The language in R.C. 4741.26 is clear and unambiguous. The statute prohibits inspections of a place of business conducted without five days prior notice. Also, R.C. 4741.26 does not provide an exception for inspections conducted as part of an investigation. Accordingly, if appellee needs to inspect a place of business as part of an investigation, it must give the licensed veterinarian five days prior notice. Stated differently, while appellee is not obligated to give advance notice that an investigation is underway, appellee must give prior notice of any inspection conducted as part of that investigation.
 {¶ 30} Obviously, notice may give an unscrupulous person an opportunity to conceal or otherwise dispose of evidence. This is, unfortunately, an issue for the General Assembly to remedy, as we are limited to interpreting R.C. 4741.26(A) as written.
 {¶ 31} Finally, although the common pleas court found that the charges against appellants were not the result of appellee's inspection of their place of business, the court does not provide us with its reasoning. If the records appellee relied upon to suspend appellants' licenses were kept at their place of business, which it appears they were, the failure to give them the necessary notice would clearly have an effect on the validity of the charges. Moreover, the purpose of the initial investigation was to determine if appellants' use of anabolic steroids in their treatment of animals was consistent with accepted practices. It was only after the unannounced inspection that the board decided to charge appellants with failing to properly maintain their records.
 {¶ 32} In light of the foregoing analysis, appellants' second assignment of error has merit. Furthermore, our disposition renders any discussion with respect to the first assignment of error moot. The judgment of the trial court is reversed, and the matter is remanded for further proceedings consistent with this opinion. Specifically, on remand the common pleas court is instructed to determine what effect the failure to give appellants prior notice of the inspection had on the sustainability of the accusations for which appellants were disciplined.
Donald R. Ford, P.J., and Cynthia Westcott Rice, J., concur.