Per Curiam.
*499 {¶ 1} Appellant, the administrator of the Bureau of Workers' Compensation, appeals the judgment of the Tenth District Court of Appeals granting a writ of mandamus that orders the administrator to vacate the November 14, 2013 order of the administrator's designee finding that appellee, Daily Services, L.L.C., was the successor to I-Force, L.L.C., and was responsible for I-Force's rights and obligations under former Ohio Adm.Code 4123-17-02(C), 2006-2007 Ohio Monthly Record 1-79, effective July 27, 2006, and to enter an order finding that Daily Services is not the successor to I-Force.
{¶ 2} For the reasons that follow, we reverse the judgment of the court of appeals and deny the writ of mandamus.
Factual and Procedural Background
{¶ 3} Daily Services is a temporary-employment agency owned by Ryan Mason that focuses on short-term or daily staffing. Mason also owned another temporary-employment agency called I-Force that focused on long-term staffing. The businesses were located in adjacent buildings on Morse Road in Columbus. Each agency had its own workers' compensation policy.
{¶ 4} In 2008, I-Force's workers' compensation premium increased to approximately $3.5 million based on its poor claims history. I-Force did not pay its premium for the second half of 2008, which was due by February 28, 2009.
{¶ 5} During an audit of Daily Services conducted in April 2009, the bureau learned that I-Force had closed over the weekend of March 21 through 22, 2009, but that the business appeared to be continuing to operate through Daily Services. Consequently, the bureau concluded that Daily Services was the successor-in-interest to I-Force and therefore was responsible for all of I-Force's existing and future financial rights and obligations, effective March 23, 2009. In addition, the bureau combined the experience of the two companies pursuant to Ohio Adm.Code 4123-17-02(B), to establish the premium rate of Daily Services, as the successor.
{¶ 6} On June 1, 2009, Daily Services received from the bureau an invoice for more than $3.48 million for I-Force's unpaid premiums. On June 15, 2009, Daily *500 Services filed a protest objecting to the bureau's determination that it was the successor to I-Force. The protest was referred *115 to an adjudicating committee of the bureau for a hearing on the merits of the bureau's decision. The committee affirmed the bureau's decision to combine the experience of the two entities. Daily Services did not appeal the committee's order.
{¶ 7} The bureau held another hearing on March 20, 2013, to resolve the issue of successor liability after it was determined in related collection proceedings that the adjudicating committee had not decided the successorship issue from the 2009 protest. Two of the bureau's employees testified on its behalf: Nancy Archer, who conducted the 2009 investigation into I-Force's transfer of operations to Daily Services, and Heidi Pack, who reviewed the information from Archer and determined that Daily Services had successor liability. Daily Services presented no witnesses.
{¶ 8} Following the hearing, the adjudicating committee again denied the June 2009 protest. The committee concluded that Mason's maneuvering of I-Force's business operations to Daily Services amounted to a voluntary transfer of business operations. Thus, the committee determined that Daily Services was the successor to I-Force under former Ohio Adm.Code 4123-17-02(C)(1).
{¶ 9} Daily Services appealed. The matter was referred to the administrator's designee, who determined that the adjudicating committee used the proper legal standard and that Daily Services wholly succeeded I-Force for purposes of the transfer of I-Force's rights and obligations under the workers' compensation law, including I-Force's unpaid premiums, pursuant to former Ohio Adm.Code 4123-17-02(C)(1) ("Where one employer wholly succeeds another in the operation of a business, the bureau shall transfer the predecessor's rights and obligations under the workers' compensation law").
{¶ 10} The designee itemized the evidence set forth by the adjudicating committee, which included Daily Services' hiring of I-Force's permanent staff over the weekend of March 21-22, 2009, its assumption of I-Force's property and computer leases, its payment of I-Force's federal quarterly taxes, and its purchase of the right to use the "I-Force" name. The designee also identified evidence that Daily Services had added manual codes in preparation for acquiring I-Force's clients, had contacted I-Force's clients to have them sign new contracts with a name change only, and had ranked the profitability of I-Force's clients. And the designee noted that Mason ceased all I-Force business as of March 23, 2009.
{¶ 11} Daily Services filed a complaint for a writ of mandamus alleging that the bureau's denial of the 2009 protest was an abuse of its discretion.
{¶ 12} The magistrate assigned to the case at the court of appeals noted that former Ohio Adm.Code 4123-17-02(C)(1), in effect in 2009, did not define "wholly *501 succeeds" and that case law provided little guidance on the meaning of the phrase. But, the magistrate noted, the rule was amended in 2010 to expressly provide that "an employer wholly succeeds another in the operation of a business when '[t]he succession transaction is entered into for the purpose of escaping obligations under the workers' compensation law.' " State ex rel. Daily Servs., L.L.C. v. Buehrer , 2016-Ohio-8333, 2016 WL 7427412, ¶ 66, quoting former Ohio Adm.Code 4123-17-02(C)(1)(d), 2009-2010 Ohio Monthly Record 2-3058, effective July 5, 2010. According to the magistrate, the bureau's findings would have been proper under this version of the rule but were not relevant under the version of the rule that was in effect in 2009. Thus, the magistrate concluded that *116 the facts did not support a finding that Daily Services wholly succeeded I-Force.
{¶ 13} The court of appeals overruled the bureau's objections and adopted the magistrate's decision. The court acknowledged that Daily Services "orchestrated a business strategy to take over the most profitable aspects of I-Force's business" but concluded that doing so did not establish that Daily Services had "wholly succeeded" the business operations of I-Force. Id. at ¶ 12. The court of appeals therefore granted a writ of mandamus ordering the bureau to vacate the order of the administrator's designee.
{¶ 14} This matter is before this court on the direct appeal of the bureau. A cross-appeal filed by Daily Services was dismissed for failure to prosecute. 149 Ohio St.3d 1424, 2017-Ohio-4132, 75 N.E.3d 1279.
Analysis
{¶ 15} The Workers' Compensation Fund is funded by compulsory contributions from employers and is administered by the state. Ohio Constitution, Article II, Section 35. The bureau is required to adopt rules with respect to the collection, maintenance, and disbursements of the fund, including special rules "necessary to safeguard the fund and that are just in the circumstances." R.C. 4123.32(B). These special rules cover "the rates to be applied where one employer takes over the occupation or industry of another," and "the administrator may require that if any employer transfers a business in whole or in part or otherwise reorganizes the business, the successor in interest shall assume, in proportion to the extent of the transfer, * * * the employer's account." Id.
{¶ 16} This case involves former Ohio Adm.Code 4123-17-02(C), which provided:
Succeeding employers-risk coverage transfer.
(1) Whenever one employer succeeds another employer in the operation of a business in whole or in part, the successor shall notify the bureau of the succession. Where one employer wholly succeeds another in the *502 operation of a business, the bureau shall transfer the predecessor's rights and obligations under the workers' compensation law. The successor shall be credited with any credits of the predecessor, including the advance premium security deposit of the predecessor. This paragraph shall apply where an employer wholly succeeds another employer in the operation of a business on or after September 1, 2006.
(Emphasis added.) 2006-2007 Ohio Monthly Record 1-79, effective July 27, 2006.[2]
{¶ 17} The issue before us is whether the bureau abused its discretion when it determined that Daily Services "wholly succeed[ed]" I-Force in the "operation of a business" for purposes of transferring I-Force's unpaid premium liabilities to Daily Services pursuant to former Ohio Adm.Code 4123-17-02(C)(1). An abuse of discretion occurs when there is no evidence upon which the bureau could have based its decision.
*117 State ex rel. Commercial Lovelace Motor Freight, Inc. v. Lancaster , 22 Ohio St.3d 191, 193, 489 N.E.2d 288 (1986). So long as there is some evidence in the record to support the decision, the bureau acted within its discretion and the granting of a writ of mandamus is not warranted. State ex rel. Secreto v. Indus. Comm. , 80 Ohio St.3d 581, 582-583, 687 N.E.2d 715 (1997).
{¶ 18} The bureau argues that as part of its statutory duty to safeguard the Workers' Compensation Fund, it is within its discretion under the version of former Ohio Adm.Code 4123-17-02 applicable to this case to deem an employer to have "wholly succeeded" another when nothing remains of the predecessor employer after the successor employer assumes the predecessor's business operations. Thus, the bureau contends, even if Daily Services did not assume every customer, employee, or lease held by I-Force, it wholly succeeded the business operations of I-Force, which no longer existed after the weekend transfer in March 2009. The bureau also maintains that its statutory obligation to safeguard the fund authorizes it to find that an employer is a "successor in interest" when that employer attempts to evade workers' compensation liabilities.
{¶ 19} We agree.
Daily Services "wholly succeeded" the business operations of I-Force even if it did not assume every customer, employee, or lease held by I-Force before the transfer
{¶ 20} This court has held that a successor-in-interest, for workers' compensation purposes, is simply a transferee of a business in whole or in part.
*503 State ex rel. Lake Erie Constr. Co. v. Indus. Comm. , 62 Ohio St.3d 81, 83-84, 578 N.E.2d 458 (1991). The transfer must be voluntary. State ex rel. Valley Roofing, L.L.C. v. Bur. of Workers' Comp. , 122 Ohio St.3d 275, 2009-Ohio-2684, 910 N.E.2d 1018, ¶ 5. A transfer may be in a manner other than by a purchase. State ex rel. K & D Group, Inc. v. Buehrer , 135 Ohio St.3d 257, 2013-Ohio-734, 985 N.E.2d 1270, ¶ 13.
{¶ 21} The bureau maintains that the transfer of business operations from one entity to another does not require counting the assets that the successor acquired. The bureau argues that the evidence established that over the course of one weekend, Daily Services assumed I-Force's business functions, including many of its employees, leases, and best customers. The bureau further argues that because I-Force then ceased to exist, Daily Services wholly succeeded the business operations of I-Force.
{¶ 22} The evidence supports this conclusion. The administrator's designee detailed the transfer of I-Force's permanent employees, leases, and contracts to Daily Services over the weekend before I-Force ceased doing business, Mason's planning the transition in advance by establishing a system ranking I-Force's customers based on creditworthiness and payment history, and Mason's adding new manual codes to Daily Services' account in preparation for workers' compensation coverage for those customers moving from I-Force to Daily Services.
{¶ 23} The administrator's designee also relied on statements from I-Force's regional supervisors who were told to contact I-Force's clients and have them sign new contracts informing them that it was a name change only with no interruption of services. Finally, the evidence indicated that on March 23, 2009, Mason ceased operating I-Force altogether.
{¶ 24} Thus, even if Daily Services did not assume every customer, employee, or lease held by I-Force, there was some evidence to support the conclusion that Daily Services wholly succeeded I-Force for purposes of the version of former *118 Ohio Adm.Code 4123-17-02(C) applicable here. As of March 23, 2009, nothing remained of I-Force except the business functions that were assumed by Daily Services. The bureau did not abuse its discretion when it determined that Daily Services wholly succeeded the business operations of I-Force.
The bureau's statutory obligation to safeguard the Workers' Compensation Fund authorizes it to find that an employer is a "successor in interest" when that employer attempts to evade workers' compensation liabilities
{¶ 25} The bureau has a fiduciary responsibility to safeguard the Workers' Compensation Fund. R.C. 4123.32(B) ; State ex rel. Harry Wolsky Stair Builder, Inc., v. Indus. Comm. , 58 Ohio St.3d 222, 224, 569 N.E.2d 900 (1991). This *504 responsibility includes detecting and thwarting an employer's scheme to avoid its workers' compensation liabilities.
{¶ 26} Below, the court of appeals acknowledged that Mason intentionally orchestrated a business strategy for Daily Services to take over the most profitable aspects of I-Force's business by cherry-picking customers, employees, and business locations. Under these circumstances, the bureau did not abuse its discretion when it concluded that Daily Services was the successor-in-interest to I-Force based on the evidence that Mason was attempting to evade workers' compensation liabilities.
{¶ 27} When an order is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order. State ex rel. Avalon Precision Casting Co. v. Indus. Comm. , 109 Ohio St.3d 237, 2006-Ohio-2287, 846 N.E.2d 1245, ¶ 9. The final order of the administrator's designee, affirming the March 20, 2013 decision of the adjudicating committee, concluded that the adjudicating committee correctly analyzed the evidence in light of the proper standard in effect at the time of the transfer-whether Daily Services wholly succeeded I-Force-under the version of former Ohio Adm.Code 4123-17-02(C)(1) at issue here and that the committee based its decision on extensive evidence in the record. Therefore, the bureau did not abuse its discretion, and Daily Services failed to demonstrate that it was entitled to relief in mandamus.
{¶ 28} We reverse the judgment of the court of appeals and deny the writ.
Judgment reversed and writ denied.
O'Connor, C.J., and French and DeGenaro, JJ., concur.
Fischer, J., concurs in judgment only.
Kennedy, J., dissents, with an opinion joined by O'Donnell and DeWine, JJ.

Ohio Adm.Code 4123-17-02(C) was amended, effective July 2010, to require transfer of the predecessor's rights and obligations when the succession transaction was entered into for the purpose of escaping financial obligations under the workers' compensation law. Former Ohio Adm.Code 4123-17-02(C)(1), 2009-2010 Ohio Monthly Record 2-3058, effective July 5, 2010. The bureau did not apply this provision and does not contend that it applies to the facts of this case.